IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Eric Cary, <br><br> Petitioner, <br><br> vs. <br><br> Rivas, et al., <br><br> Respondents. | No. CV 05-1903 PHX-SRB (LOA) <br><br> **ORDER AND** <br> **REPORT AND RECOMMENDATION** |

This matter arises on Petitioner's Petition for Writ of Habeas Corpus by Person in State Custody Pursuant to 28 U.S.C. § 2254. (Doc. #1.) Respondents filed an Answer to the Petition asserting, *inter alia*, that it is untimely (Doc. #7), to which Petitioner has replied (Doc. #13). In accordance with Court orders, Petitioner has also submitted additional briefing regarding prison lockdowns which allegedly impeded his ability to timely file his petition.

**PROCEDURAL BACKGROUND**

On November 12, 1999, Petitioner was indicted in Maricopa County Superior Court case number CR 1999-015911 on one count of fraudulent schemes and artifices, a class 2 felony, and ten counts of forgery, all class 4 felonies. (Respondents' Ex. A[1].) On April 26, 2000, Petitioner was indicted in Maricopa County Superior Court case number CR 2000-006878 on one count of robbery, a class 4 felony. (Respondents' Ex. B.) On February 27, 2001, Petitioner entered a plea agreement in both cases, pleading guilty to one count of fraudulent

---

[1] Citations to "Respondents' Ex. ___" are to exhibits attached to Answer to Petition for Writ of Habeas Corpus. (Doc. 11.)

1 schemes and artifices in CR 1999-015911, and one count of robbery in CR 2000-006878.
2 (Respondents' Exs. C, D.) On April 12, 2001, the trial court[2] accepted Petitioner's plea and
3 sentenced him to 9.75 years imprisonment, with 503 days of presentence incarceration credit,
4 for the fraudulent schemes and artifices conviction, and 6 years imprisonment, with 356 days
5 of presentence incarceration credit, for the robbery conviction, to run concurrently.
6 (Respondents' Ex. E.)

7 On July 26, 2001, Petitioner filed a single notice of post-conviction relief
8 challenging his convictions and sentences in both cases. (Respondents' Ex. F.) On January 4,
9 2002, counsel for Petitioner notified the court that she was unable to find any claims to raise in
10 post-conviction proceedings. (Respondents' Ex. G.) Counsel requested a thirty-day extension
11 of time for Petitioner to file a petition for post-conviction relief *in propia persona*. (Id.)
12 Thereafter, on March 4, 2002, Petitioner filed a *pro per* notice of post-conviction relief.
13 (Respondents' Ex. H) On July 26, 2002, the trial court denied Petitioner's petition for post-
14 conviction relief. (Respondents' Ex. K.)

15 On August 8, 2002, Petitioner requested an extension of time in which to file a
16 motion for rehearing or petition for review of the trial court's denial of his petition for post-
17 conviction relief. (Respondents' Exh. L) On August 9, 2002, the trial court granted Petitioner's
18 request, extending the deadline until September 9, 2002. (Respondents' Ex. M.) Petitioner
19 never filed a motion for rehearing or petition for review. Instead, on August 2, 2004, Petitioner
20 filed two separate notices of post-conviction relief again challenging his convictions and
21 sentences in both cases. (Respondents' Exs. N, O.) On August 5, 2004, the trial court dismissed
22 both of Petitioner's notices of post-conviction relief finding that Petitioner was not entitled to
23 relief. (Respondents' Ex. O.)

24 On October 21, 2004, Petitioner filed a petition for review by the Arizona Court of
25 Appeals in both case numbers, which the court assigned the consolidated case number CA-CR
26 04-0813. (Respondents' Ex. P.) On October 26, 2004, Petitioner also filed notices of appeal

27
28     [2] The Honorable Michael R. McVey presided.

from the superior court in both cases, which the Court of Appeals assigned case numbers CA-CR 04-0829 and CA-CR 04-0830. (Respondents' Exs. Q, R.)

**CA-CR 04-0813**

On October 28, 2004, the Arizona Court of Appeals dismissed Petitioner's petition for review as untimely. (Respondents' Ex. S.) Petitioner submitted a motion for reconsideration. (Respondents' Ex. T.) The Court of Appeals denied the motion for reconsideration without prejudice to filing a motion for leave to file an untimely appeal. (Respondents' Ex. U.) Petitioner never filed such a motion.

**CA-CR 04-0829 and CA-CR 04-0830**

On November 3, 2004, the Arizona Court of Appeals dismissed Petitioner's notice of appeal as untimely in both cases. (Respondents' Exs. V, W.) On November 26, 2004, Petitioner filed a motion for reconsideration in both cases. (Respondents' Ex. X.) On December 1, 2004, the Court of Appeals denied the motion for reconsideration in case number CA-CR 04-0830. (Respondents' Ex. Y.) On December 7, 2004, Petitioner submitted a motion to file an untimely appeal in CA-CR 04-0830. (Respondents' Ex. Z.) The Court of Appeals denied the motion on December 15, 2004. (Respondents' Ex. AA.) On December 27, 2004, Petitioner submitted a petition for review in the Arizona Supreme Court in both cases, which the Court dismissed as untimely on January 11, 2005. (Respondents' Exs. BB, CC) On January 17, 2005, Petitioner filed a second petition for review in the Arizona Supreme Court, which was summarily denied on June 6, 2005. (Respondents' Exs. DD, EE)

On June 23, 2005, Petitioner filed the pending Petition for Writ of Habeas Corpus, raising three grounds for relief: (1) ineffective assistance of counsel based on counsel's failure to inform Petitioner of the "ramification of signing away his double jeopardy rights," and Blakely v. Washington[3] constitutes a change in the law that entitles Petitioner to be resentenced without enhancements; (2) the court erred in denying Petitioner's application to proceed in forma pauperis on appeal and in failing to appoint counsel; and (3) Blakely is a new rule of law

---

[3] 542 U.S. 296, 124 S. Ct. 2531 (2004).

that retroactively applies to Petitioner, and Arizona's sentencing laws violate Blakely. (Doc. #1.)

## STATUTE OF LIMITATIONS

As set forth more fully below, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year limitations period for state prisoners seeking federal habeas relief. 28 U.S.C. § 2244(d)(1). Because Petitioner filed his petition after the effective date of the AEDPA, § 2244(d)(1) applies.

**I. Timeliness under the AEDPA**

Title 28 U.S.C. § 2244 provides, in pertinent part, that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.
>
> The limitation period shall run from the latest of
>
> (A) the date on which the judgment became *final by the conclusion of direct review* or the expiration of the time for seeking such review.

28 U.S.C. § 2244(d)(1)(A) (emphasis added for clarity). The one-year limitations period is tolled for the time period during which a properly filed application for post-conviction relief or other collateral review is pending in the state court. Id. § 2244(d)(2). This time period includes the intervals between the disposition of an appeal or post-conviction petition and the filing of an appeal or successive petition at the next state appellate level. Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

Section 2244(d)(1)(A) does not define "final by the conclusion of direct review." However, the Supreme Court explained that "by 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for writ of certiorari elapsed or a petition for certiorari finally denied." Griffith v. Kentucky, 479 U.S. 314, 321 n.6 (1987) (quoting United States v. Johnson, 457 U.S. 537, 542 n.8 (1982)).

Pursuant to Petitioner's guilty pleas, judgments of conviction were rendered on April 12, 2001. Peterson v. Jacobson, 411 P.2d 31, 32 (Ariz. App. 1966) (when a criminal conviction is the result of a plea agreement, a judgment of conviction is rendered upon imposition of

sentence). After the 1992 Amendments to Rule 17 of the Arizona Rules of Criminal Procedure, a Rule 32 petition is the exclusive avenue for review of the proceedings in a noncapital case following a plea agreement. Ariz. R. Crim. P. 17.1, comment on 1992 Amendments. This change in the law applied to defendants who plead guilty on or after the effective date of the amendments, i.e., December 1, 1992. Id. Because Petitioner's guilty plea was entered on February 27, 2001 — after the effective date of the amendments — Petitioner was not entitled to seek direct appellate review of his conviction. Therefore, his state court conviction became final on April 12, 2001, when the trial court accepted his guilty plea, entered judgment, and sentenced Petitioner. The AEDPA's one-year limitations period commenced on April 13, 2001. Therefore, Petitioner had until April 13, 2002 to file a federal habeas petition. Petitioner did not file his pending habeas petition until June 23, 2005. Therefore, it is untimely unless Petitioner establishes a basis for tolling the limitations period.

**II. Tolling of the Limitations Period**

In view of Petitioner's untimely filing, the Court will consider whether there is a basis for tolling the limitations period.

**A. Pendency of Petition for Post-Conviction Review Pursuant to Rule 32**

The AEDPA's limitations period is tolled during the time that a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); Stevens v. Hickman, 2000 WL 1092242, at *1 (N.D. Cal. 2000) (stating that an application for collateral review is pending in State court for "all the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state remedies with regard to particular post-conviction proceedings.")) (quoting Nino, 183 F.3d at 1006).

On July 26, 2001, when the one-year limitations period had been running for 104 days, Petitioner filed his first petition for post-conviction relief. On July 26, 2002, the trial court denied the petition for relief. Although Petitioner subsequently requested an extension of time in which to file a motion for rehearing or petition for review, he took no further actions to

attempt to exhaust state remedies with regard to his post-conviction proceedings. Therefore, the limitations period was tolled from July 26, 2001 until July 27, 2002, the day after the trial court denied Petitioner's petition for post-conviction relief. Isley v. Ariz. Dep't of Corrs., 383 F.3d 1054, 1056 (9th Cir. 2004) (holding that the state petition was "pending" and tolled AEDPA's limitations period once petitioner filed notice of post-conviction relief under state procedures); Patterson v. Stewart, 251 F.3d 1243, 1245–46 (9th Cir. 2001) (the day of the event is excluded from the limitations period). The statute of limitations ran for an additional 261 days until its expiration on April 4, 2003. Petitioner did not file his pending petition until June 23, 2005. Therefore, it is untimely unless Petitioner establishes a basis for equitable tolling of the limitations period.

### B. Equitable Tolling

The § 2244(d) limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. Calderon v. United States, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled, in part, on other grounds*, 163 F.3d 530 (9th Cir. 2002). Tolling is appropriate when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Id. (citation omitted). A party seeking equitable tolling must have acted with reasonable diligence "throughout the period he seeks to toll." Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000). Tolling, however, is not available in most cases and is not available here. Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.") (citation omitted).

In his reply, Petitioner repeatedly states that he is a "layman in the law," and that his lack of knowledge of criminal procedure and the law should excuse his untimely filing. He further contends that prison conditions including lockdowns and limited access to legal materials constitute extraordinary circumstances that warrant tolling the statute of limitations. Finally, Petitioner claims that if he had been appointed counsel on post-conviction review, he would have been successful in seeking post-conviction relief.

None of Petitioner's arguments establishes a basis for equitable tolling. <u>Allen v. Lewis</u>, 255 F.3d 798, 800 (9th Cir. 2001) (per curiam) (requiring petitioner to show that "extraordinary circumstances" were the "but-for and proximate cause of his untimeliness"). First, Petitioner's lack of familiarity with the law does not toll the limitations period. <u>Hughes v. Idaho State Bd. of Corrs.</u>, 800 F.2d 905, 909 (9th Cir. 1986) (finding that a pro se prisoner's illiteracy was not sufficient to satisfy the standard of an objective, external factor amounting to "cause" for purposes of avoiding the procedural bar on his habeas claim). Petitioner next argues that prison lockdowns prevented him from filing a timely petition. Petitioner refers to "lockdowns" generally and does not provide any details indicating how any particular lockdown may have interfered with his ability to pursue his claims. Petitioner has filed a separate motion entitled "Motion to ask the Court to Subpoena . . . Logs" in which he requests that the Court order Respondents to provide a date log identifying the dates on which the prison was locked down. (document # 16) Even absent the specific dates of the lockdowns, Petitioner should possess the information regarding the dates on which he attempted to mail his petition and was prevented from so doing. Petitioner does not allege any dates upon which his attempts to mail his petition were thwarted because of prison lockdowns. <u>Marsh v. Soares</u>, 223 F.3d 1217, 1220 (10th Cir. 2000) (holding that delays caused by prison inmate law clerk and law library closures do not justify equitable tolling). Thus, the Court will deny Petitioner's motion for subpoena. Petitioner's status as a prison inmate does not constitute an extraordinary circumstance beyond his control warranting the tolling of the one-year limitations period. <u>Jihad v. Hvass</u>, 267 F.3d 803, 806–07 (8th Cir. 2001) (stating that prisoner's lack of access to a transcript did not preclude the timely commencement of post-conviction proceedings and, therefore, did not warrant equitable tolling). Consequently, Petitioner fails to establish a basis for equitable tolling.

Finally, Petitioner contends that the lack of counsel on state post-conviction review resulted in his untimely filing of his § 2254 petition. Petitioner was appointed counsel for his initial post-conviction proceedings. However, Petitioner did not have counsel on appeal of his post-conviction proceedings. Regardless, Petitioner's lack of counsel during state proceedings

does not explain his failure timely to file his federal habeas corpus petition. Petitioner is not entitled to counsel on federal habeas corpus review. Bonin v. Vasquez, 999 F.2d 425, 429 (9th Cir. 1993)(explaining that there is no constitutional right to counsel on federal habeas review.) Consequently, the absence of counsel during appellate review of Petitioner's state post-conviction proceedings does not warrant tolling to limitations period. Id.

In conclusion, because Petitioner filed the pending Petition after the expiration of the limitations period and has failed to present any basis for equitable tolling, the Court should dismiss the pending Petition as untimely. In the alternative, Petitioner's Petition should be dismissed for failure to exhaust state remedies.

**III. Exhaustion**

Under 28 U.S.C. § 2254(b)(1), before a federal court may consider a state prisoner's application for habeas relief, the prisoner must have exhausted, in state court, every claim raised in his petition. Coleman v. Thompson, 501 U.S. 722, 731 (1991). To properly exhaust state remedies, the prisoner must have afforded the state courts the opportunity to rule upon the merits of his federal constitutional claim by "fairly presenting" the claim to the state courts in a procedurally appropriate manner. Castille v. Peoples, 489 U.S. 346, 349 (1989). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004).

It is not enough that all the facts necessary to support the federal claim were before the state court or that a "somewhat similar" state law claim was raised. Reese, 124 S.Ct. at 1349 (stating that a reference to ineffective assistance of counsel does not alert the court to federal nature of the claim.) The habeas petitioner must cite in state court to the specific constitutional guarantee upon which he bases his claim in federal court. Tamalini v. Stewart, 249 F.3d 895, 898 (9th Cir. 2001). General appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish fair presentation of a federal constitutional claim. Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), *amended*

- 8 -

*on other grounds*, 247 F.3d 904 (9th Cir. 2001); Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000)(insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial.") Similarly, a mere reference to the "Constitution of the United States" does not preserve a claim. See, Gray v. Netherland, 518 U.S. 152, 162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." Lyons, 232, F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the petition or brief filed in that court. Reese, 124 S.Ct. at 1350-51.

Where a prisoner fails to "fairly present" a claim to the State courts in a procedurally appropriate manner, state court remedies may, nonetheless be "exhausted." This type of exhaustion is often referred to as "procedural default" or "procedural bar." See, Ylst v. Nunnemaker, 501 U.S. 797, 802-05 (1991); Coleman, 501 U.S. at 731-32. There are two categories of procedural default.

First, a state court may have applied a procedural bar when the prisoner attempted to raise the claim in state court. See, Nummemaker, 501 U.S. at 802-05. If the state court also addressed the merits of the underlying federal claim, the "alternative" ruling does not vitiate the independent state procedural bar. Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989); Carringer v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992)(state supreme court found ineffective assistance of counsel claims "barred under state law," but also discussed and rejected the claims on the merits, en banc court held that the "on-the-merits" discussion was an "alternative ruling" and the claims were procedurally defaulted and barred from federal review.) A higher court's subsequent summary denial of review affirms the lower court's application of a procedural bar. Nunnemaker, 501 U.S. at 803.

Second, the state prisoner may not have presented the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state court would be "futile." Teague

v. Lane, 489 U.S. 288, 297-99 (1989). Any claim not previously presented to the Arizona courts is procedurally barred from federal review because any attempt to return to state court to properly exhaust a current habeas claim would be "futile." See, Ariz. R. Crim. P. 32.1, 32.2(a) & (b); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002); State v. Mata, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.1(a)(3)(relief is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a), Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time barred. See, Beaty, 303 F.3d at 987; Moreno v. Gonzalez, 116 F.3d 409, 410 (9th Cir. 1997)(recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." Dretke v. Haley, 541 U.S. 386, 393-94, (2004); Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish cause, a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. Murray v. Carrier, 477 U.S. 478, 488 (1986). The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. Murray, 477 U.S. at 488. To establish prejudice, a prisoner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." United States v. Frady, 456 U.S. 152, 170 (1982). Where petitioner fails to establish cause, the court need not reach the prejudice prong.

To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. Schlup v. Delo, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B). Before

addressing the issue of fundamental miscarriage of justice, the federal court must address all non-defaulted claims and other grounds alleged as cause to excuse the procedural bar. <u>Dretke</u>, 124 S.Ct. at 1852.

Here, in the second notice of post-conviction relief that Petitioner filed on July 28, 2004, Petitioner raised the same claim of ineffective assistance of counsel and <u>Blakely</u> issues that he raises in Grounds One and Three of the pending § 2254 petition. (Respondents' Exh. N) The trial court dismissed Petitioner's notice of post-conviction relief as untimely and also stated that Petitioner's conviction was final before the Supreme Court issued its decision in <u>Blakely</u> and that <u>Blakely</u> does not apply retroactively. (Respondents' Exh. O)

Petitioner filed a notice of appeal and petition for review which the Arizona Court of Appeals dismissed as untimely. (Respondents' Exhs. P, Q, R, S, V, W)  Petitioner also filed a petition for review by the Arizona Supreme Court which was summarily denied. (Respondents' Exhs.  DD, EE)

Petitioner's claims raised in Grounds One and Three are procedurally barred because the state court found those claim procedurally defaulted - untimely- on post-conviction review. Additionally, Petitioner never presented his claims raised in Ground Two to the state courts. Therefore, Ground Two is procedurally defaulted as well.  Petitioner does not establish cause and prejudice or a fundamental miscarriage of justice to overcome the procedural bar.

**IV.  Merits of Petitioner's Claims**

Nothwithstanding the procedural grounds for dismissing the Petition, Petitioner's claims fail on the merits.

/ / /

/ / /

/ / /

**A.  Grounds One and Three**

- 11 -

In Grounds One and Three Petitioner argues that Blakely v. Washington, 542 U.S. 296 (2004) constitutes a change in that law that applies to Petitioner retroactively and that counsel was ineffective in failing to inform Petitioner of his rights under Blakely.

In Apprendi, the Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. 466 (2000). Thereafter, in Blakely, the Supreme Court extended the rule of Apprendi to judicial fact-finding in the sentencing phase. Here, Petitioner argues that Blakely should apply retroactively to his case. As discussed below, the Ninth Circuit has rejected Petitioner's argument.

In Teague v. Lane, 489 U.S. 288, 310 (1989), the Supreme Court held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Id. at 310. A case announces a new rule "if the result was not dictated by precedent existing at the time the defendant's conviction became final." Id.

Two exceptions exist to Teague's prohibition against the application of "new rules" of criminal procedure to cases in which the conviction has already become final. First, a new rule applies retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authorities to proscribe." Teague, 489 U.S. at 311. Second, a new rule of criminal procedure applies retroactively if it constitutes a "watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Saffle v. Parks, 494 U.S. 484, 495 (1990). The Supreme Court has noted that "[t]his class of rules is extremely narrow." Schriro v. Summerlin, 124 S.Ct. 2519, 2523 (2004).

Teague applies only to procedural rules, and not to substantive rules deciding the meaning or scope of a criminal statute. Bousley, 523 U.S. at 620. A rule is substantive rather than procedural if "it alters the range of conduct or the class of persons that the law punishes." Summerlin, 124 S.Ct. at 2523. By contrast, "rules that regulate only the manner of determining

the defendant's culpability are procedural." Id.  Thus, when a defendant seeks to benefit from a judicial opinion issued after a defendant's conviction, the court must first determine whether the opinion announces a new rule of criminal procedure or whether the rule is substantive. Id. If the court determines that the rule is procedural, then the court conducts a three-step Teague analysis.  See, Beard v. Banks, 124 S.Ct. 2504, 2511 (2004).  First, the court determines the date on which the defendant's conviction became final.  Beard, 124 S.Ct. at 2510.  Second, the court must "survey the legal landscape as it then existed" and determine whether the court considering the defendant's claim at the time the conviction became final "would have felt compelled by the existing precedent to conclude that the rule [he] seeks was required by the Constitution."  Caspari v. Bohlen, 510 U.S. 383, 390 (1994).  Finally, the court must decide whether the rule which the defendant seeks to invoke falls within "one of the two narrow exceptions to the nonretroactivity principle."  Id.

### 2.  **Teague** Analysis of **Blakely**

The Court will apply Teague to determine whether Blakely applies retroactively to this case on collateral review.  Blakely was an expansion of the rule announced in Apprendi that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Ring v. Arizona, 536 US. 584, 592-93 (2002), the Supreme Court applied the rule announced in Apprendi to require that a jury, rather than a judge, determine the existence of any aggravating factor required to authorize the imposition of the death penalty under the relevant state sentencing scheme.

Thereafter, in Blakely, the Supreme Court extended the rule announced in Apprendi and Ring to invalidate an upward departure under the Washington state sentencing guidelines that was imposed on the basis of facts found by the judge at sentencing, even though the sentence was lower than that statutory maximum for the crime.  The Court held that the sentence violated the Sixth Amendment because the sentence was imposed based on facts that were "neither admitted by [the defendant] nor found by a jury."  Blakely, 124 S.Ct. at 2531.

- 13 -

The Supreme Court has held that its decision in <u>Ring</u>, <u>Blakely</u>'s predecessor, was "properly classified as procedural." <u>Summerlin</u>, 124 S.Ct. at 2523. Similar to the holding in <u>Ring</u>, the holding in <u>Blakely</u> did not alter the range of conduct made criminal by Washington law, and "rested entirely on the Sixth Amendment's jury-trial guarantee, a provision that has nothing to do with the range of conduct a State may criminalize." <u>Id.</u> Instead, <u>Blakely</u> and <u>Ring</u>, "altered the range of permissible methods for determining [a defendant's punishment], requiring that a jury rather than a judge find the essential facts bearing on punishment." <u>Id.</u> As the Court stated in <u>Summerlin</u>, "[r]ules that allocate decisionmaking authority in this fashion are prototypical procedural rules . . . ." <u>Id.</u> Further, all of the courts of appeals to address the issue have held that <u>Apprendi</u>, the progenitor of both <u>Ring</u> and <u>Blakely</u>, announced a rule of criminal procedure, not a substantive rule. See, <u>United States v. Swinton</u>, 333 F.3d 481, 488-89 (3d Cir. 2003)(citing cases). Thus, <u>Blakely</u>, like <u>Ring</u> and <u>Apprendi</u>, announced a rule of criminal procedure.

### 1. Whether <u>Blakely</u> announced a *New* Rule of Criminal Procedure

Having determined that <u>Blakely</u> announced a procedural rule, the Court must determine whether <u>Blakely</u> announced a "new" rule of criminal procedure. To make that determination, the court must: (1) ascertain when Movant's conviction became final, and (2) review the legal landscape existing at the time Movant's conviction became final and decide whether the rule Movant seeks "was dictated by then-existing precedent." <u>Beard</u>, 124 S.Ct. at 2511.

Petitioner's conviction became final in April of 2001. Thus, the Court must survey the legal landscape as of April, 2001 to determine whether the holding in <u>Blakely</u> was dictated by the precedent existing at the time.

A review of the legal landscape as of April, 2001 demonstrates that a district court judge was not prohibited by the then-existing precedent, from determining facts that increased the available sentence under the Sentencing Guidelines without exceeding the statutory maximum sentence. All federal appellate courts to consider this issue after <u>Apprendi</u> was

- 14 -

decided but before the Supreme Court issued its decision in Blakely, upheld the application of the Sentencing Guidelines against Apprendi challenges. See, United States v. Kelly, 2005 WL 1801668, * 2 (D.Or., July 21, 2005)(stating that before Blakely, every federal court of appeals had held that Apprendi was not applicable to Guidelines calculations made within the statutory maximum); United States v. Samuel, 296 F.3d 1169, 1172 (D.C.Cir. 2002)(stating that "[t]his court and the other courts of appeals have held that Apprendi's rule does not apply to offense characteristics that enhance a defendant's sentence under the Sentencing Guidelines, but that do not increase the sentence above the statutory maximum for the offense of conviction."); United States v. Fields, 251 F.3d 1041, 1043-44 (D.C.Cir. 2001)("Apprendi does not apply to enhancements under the Sentencing Guidelines when the resulting sentence remains within the statutory maximum."); *In re* Sealed Case, 246 F.3d 696, 698 (D.C.Cir. 2001)(stating that considering the "Apprendi Court's explicit endorsement" of sentence enhancements within statutory limits, "it is hard to see how the Court could have intended to mandate the heightened standard for application of the Guidelines' enhancement instructions when the resulting sentence remains within the statutory maximum."); United States v. Hernandez-Guardado, 228 F.3d 1017, 1027 (9th Cir. 2000); Simpson v. United States, 376 F.3d 679, 681 (7th Cir. 2004)(stating that "before Blakely was decided, every federal court of appeals had held that Apprendi did not apply to guidelines calculations made within the statutory maximum.")

After review of the legal landscape that existed when Petitoner's conviction became final, the Court concludes that Blakely announced a new rule of criminal procedure because there was no binding precedent at the time that Petitioner's conviction became final that required the court to direct the jury to make findings, beyond a reasonable doubt, concerning the appropriate sentencing guideline range, provided the resulting sentence was within the statutory maximum.

**2. Whether Blakely Fits within either of the Teague Exceptions**

The Court must next determine whether Blakely fits within an exception to the rule that new rules of criminal procedural do not apply retroactively. As discussed above, retroactive effect is only given to new rules of criminal procedure that: (1) place "certain kinds of primary,

private individual conduct beyond the power of the criminal law-making authority to prescribe," or (2) constitute "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Teague, 489 U.S. at 311. Here, the first exception does not apply because the rule announced in Blakely did not place any kind of conduct beyond the reach of the criminal law.

Second, in view of the Supreme Court's decision in Summerlin, 124 S.Ct. at 2523, Blakely does not fit within the second exception because it does not constitute the type of watershed rule that implicates either fundamental fairness or accuracy to such a degree to be "implicit in the concept of ordered liberty." Graham v. Collins, 506 U.S. 461, 478 (1993). To the contrary, in Summerlin, the Supreme Court rejected the argument that Ring constituted a watershed rule of criminal procedure, even though Ring, like Blakely, prohibited the enhancement of a sentence beyond the statutory maximum unless a jury found the facts authorizing the enhancement beyond a reasonable doubt. Summerlin, 124 S.Ct. at 2524-26. In finding that Ring did not constitute a watershed rule, the Court noted that the relevant issue is whether judicial fact-finding so "'seriously diminishe[s]' accuracy that there is an 'impermissibly large risk' of punishing conduct that the law does not reach." Id. at 2525 (quoting Teague, 489 U.S. at 312-313). The Court found it "implausible" that "judicial factfinding so seriously diminishe[s] accuracy as to produce an impermissibly large risk of injustice." Id. Thus, because the Supreme Court has rejected the argument that Ring constitutes a watershed rule of criminal procedure, and because Ring is the immediate predecessor to Blakely and because its reasoning is indistinguishable from Blakely, Blakely does not constitute a watershed rule of criminal procedure that may be applied retroactively on collateral review. See, Cook, 386 F.3d at 950 (Blakely not retroactively applicable to case involving a successive § 2255 motion); United States v. Sanchez-Cervantes, 282 F.3d 664, 671 (9th Cir. 2000)(Apprendi is not retroactively applicable to § 2255 cases on collateral review).

Indeed all courts that have considered the question have held that the extension of the Apprendi rule announced in Blakely does not apply retroactively to cases on collateral

review. See, <u>United State v. Quintero-Araujo</u>, 343 F.Supp.2d 935, 942 (D.Idaho 2004); <u>United States v. Stoltz</u>, 325 F.Supp.2d 982, 987 (D.Minn. 2004); <u>Orchard v. United States</u>, 332 F.Supp.2d 275, 277 (D.Me. 2004); <u>Concepcion v. United States</u>, 328 F.Supp.2d 372, 374 (E.D.N.Y. 2004); <u>Tisdale v. United States</u>, 2004 WL 2782725, * 7 (D.Kan. Sept. 22, 2004); <u>United States v. Stancell</u>, 346 F.Supp.2d 204 (D. D.C. 2004). This Court agrees with the reasoning of these cases and similarly finds <u>Blakely</u> nonretroactive in this case where Movant's conviction was final before <u>Blakely</u> was announced. Because <u>Blakely</u> does not apply retroactively to this case on collateral review, Petitioner's <u>Blakely</u> claim fails.

Because <u>Blakely</u> does not apply retroactively to Petitioner, counsel was not ineffective in failing to advise Petitioner of his rights under <u>Blakely</u> which was decided after Petitioner's conviction became final. Petitioner's right to effective assistance of counsel was not violated by the failure of his counsel in 2001 to anticipate the change in previously settled law announced in <u>Blakely</u> three years later. See <u>United States v. Carew</u>, 2005 WL 1526136 (10th Cir., June 29, 2005)(counsel required to anticipate the substance and timing of future changes in the law); <u>United States v. Gonzalez-Huerta</u>, 403 F.3d 727, 750 (10th Cir. 2005)(Briscoe, J., concurring and dissenting)(no one could have predicted absolute sea-change in federal sentencing that would ultimately be wrought by <u>Booker</u>). [C]ounsel's performance is not deficient by failing to predict future developments in the law." <u>Wajda v. U.S. Parole Commission</u>, 64 F.3d 385, 388 (8th Cir. 1995). The Court, therefore, finds that counsel was not ineffective in failing to advise Petitioner of his rights under <u>Blakely</u>.

**B. Ground Two**

In his second ground for relief, Petitioner argues that the appellate court erred in denying his application to proceed *in forma pauperis* on appeal of his second post-conviction proceedings. (document # 1 at 6) Petitioner contends that he filed a notice of appeal but did not realize that the deadline for filing a petition for review was thirty days. (<u>Id.</u>) He argues that had the appellate court appointed counsel, he would have timely filed his petition for review in which he would have raised his <u>Blakely</u> claim.

- 17 -

1  The record reflects that on July 28, 2004, Petitioner filed an untimely notice of post-conviction relief in which he claimed that Blakely is a significant change in the law that applies to Petitioner. (Respondents' Exh. N) On August 5, 2004, the trial court dismissed Petitioner's notice of post-conviction relief on the ground that Petitioner's conviction was final before the Supreme Court issued its opinion in Blakely and that Blakely does not apply retroactively. (Respondents' Exh. O) On September 9, 2004, Petitioner filed a notice of appeal and on October 18, 2004 he filed a petition for review in the Arizona Court of Appeals. (Respondents' Exh. P) On November 3, 2004, the appellate court dismissed the notice of appeal as untimely. (Respondents' Exh. V) Petitioner filed a motion for reconsideration arguing that he was not aware of the deadline for filing his petition for review. The Court of Appeals denied Petitioner's motion for reconsideration (Respondents' Exh. X, Y)

Petitioner does not provide any evidence regarding his claim that he was denied counsel on review of his post-conviction proceedings and that the denial of counsel resulted in his untimely filing. Petitioner had hoped to present a Blakely claim to the trial court, but was unable to do so because of his untimely filing. Even if Petitioner was wrongly denied counsel on review of his post-conviction proceedings any error was harmless because the claim Petitioner sought to raise lacked merit therefore, he is not entitled to habeas relief. See Early v. Packer, 537 U.S. 3, 10-11(2002) (per curiam); Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). As previously discussed, Petitioner's Blakely claim lacks merit because that decision does not apply retroactively to Petitioner's case. Accordingly, even if Petitioner had timely presented a Blakely claim to the appellate court, he would not have been entitled to relief on that basis. Therefore, Petitioner's second ground for relief fails.

In accordance with the foregoing, Petitioner's claims fail as untimely, unexhausted, and on the merits.

Accordingly,

IT IS HEREBY ORDERED that Petitioner's Motion for Subpoena (document # 16) is **DENIED.**

IT IS HEREBY RECOMMENDED that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(d) (document # 1) be **DENIED.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e). Thereafter, the parties have ten days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. Fed. R.Civ. P. 72.

DATED this 8th day of December, 2005.

*[signature]*
Lawrence O. Anderson
United States Magistrate Judge